WHITAKER v. EMPIRE MUTUAL FIRE INSURANCE CO.

1. INSURANCE—MUTUAL INSURANCE COMPANY—ADVANCES—STATUTES—RECEIVERS—MORTGAGES.

   Where evidence shows that note and mortgage were deposited with mutual insurance company to make good deficit caused by bank failures, they are assets of company, and therefore maker is not entitled to their discharge by company's receiver (3 Comp. Laws 1929, §§ 12662, 12664).

2. SAME—UNEARNED PREMIUM RESERVE—RECEIVERS—MORTGAGES—DISCHARGE.

   Where note and mortgage were deposited with mutual insurance company as unearned premium reserve, maker is entitled to their discharge by company's receiver after all unearned premiums have been paid in full (3 Comp. Laws 1929, §§ 12662, 12664).

Appeal from Genesee; Gadola (Paul V.), J. Submitted January 18, 1933. (Docket No. 50, Calendar No. 36,940.) Decided April 4, 1933.

Bill by Lettie B. Whitaker against Empire Mutual Fire Insurance Company of Michigan to discharge two notes and mortgages. Decree for plaintiff as to both notes and mortgages. Defendant appeals. Affirmed as to one note and mortgage, reversed as to other.

*Guy W. Selby,* for plaintiff.

*Kelley, Sessions, Warner & Eger,* for defendant.

FEAD, J. Plaintiff had decree compelling defendant and its receiver to discharge and deliver to her two notes and real estate mortgages.

Defendant was organized in October, 1925, all policies were canceled as of May 1, 1931, unearned premiums returned to policyholders, and a receiver appointed in December, 1931. Plaintiff's son, Arthur, was secretary of the company during its whole life.

December 11, 1926, plaintiff executed and deposited with defendant a note for $3,000, secured by mortgage, under an agreement which provided that defendant should pay her interest at seven per cent. per annum, and—

"Said deposit to be considered as capital stock in the above-named company and such principal and interest as specified to be repaid from the surplus earnings of said Empire Mutual Fire Insurance Company."

December 26, 1928, plaintiff executed and deposited with defendant another note and mortgage, for $10,000, under similar agreement, except that the words "an unearned premium reserve" appeared in it in place of "capital stock." The deposit was made in accordance with 3 Comp. Laws 1929, § 12664:

"Any director, officer, or member of any such company, or any other person, may advance to such company any sum or sums of money necessary for the purpose of its business or to enable it to comply with any of the requirements of the law, and such moneys and such interest thereon as may have been agreed upon, not exceeding seven per cent. per annum, shall not be a liability or claim against the company or any of its assets, except as herein provided, and shall be repaid only out of the surplus earnings of such company. No commission nor promotion expenses shall be paid in connection with the advance of any such money to the company and the amount of such advance shall be reported in each annual statement."

The company had no "capital stock." What, then, was the purpose of the first note and mortgage?

Arthur Whitaker testified that they were deposited to guarantee the unearned premiums. He pointed to no writing, bookkeeping entry, or official report to substantiate the claim. The contemporaneous evidence, in the form of correspondence with the insurance commissioner, is to the contrary. The commissioner had called attention to the fact that the admitted assets of the company were inadequate. The deficit had been occasioned by failure of banks in which defendant's funds were deposited. Whitaker, on the day of plaintiff's execution of the note and mortgage, reported to the commissioner that the officers and directors had arranged for deposit of mortgages and cash to the credit of the company to take care of the deficit caused by the bank failures. It is clear that the deposit was made to the general assets.

The books were not produced, but it may be assumed that, as liabilities, the company carried sepa-

rately certain reserve accounts required by 3 Comp. Laws 1929, § 12662. There was no showing that any of the assets were earmarked to specific liability accounts. The fact that the deposits were partly in cash negatives the idea of a special appropriation to a particular fund. "Capital stock" evidently was used in the sense of general assets or working capital.

The case presents no equities in favor of plaintiff. If the deficit had not been cured by voluntary contributions, it would have been chargeable to the then policyholders. Present policyholders, becoming members upon the basis that the note and mortgage were assets of the company, should not be charged with the deficit.

The $3,000 note and mortgage are assets of defendant, and the decree will be reversed as to them.

The $10,000 note and mortgage occupy a different position. The circumstances of their deposit were not shown. The agreement of deposit is not ambiguous. By its express terms they were deposited as unearned premium reserve. The unearned premiums have been paid in full. They now secure nothing. The court cannot remake the contract. Plaintiff is entitled to discharge of this note and mortgage.

The decree will be modified accordingly, without costs.

McDonald, C. J., and Clark, Potter, Sharpe, North, Wiest, and Butzel, JJ., concurred.